**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

*Attorney for Plaintiff Vicky Aronson, in her capacity as Private Attorney General Representative*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKY ARONSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GANNETT CO., INC., a Delaware corporation with its principal place of business in Virginia, LDC DISTRIBUTION, LLC, a California limited liability company, LOUIS COX, an individual, and DOES 1 to 100, inclusive, <br><br> Defendants. | CASE NO: 5:19-CV-00996-PSG-JEM <br><br> Hon. Philip S. Gutierrez <br><br> **PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR APPROVAL OF PAGA SETTLEMENT** <br><br> Filed concurrently with Declaration of James M. Treglio; [Proposed] Order <br><br> <u>Hearing</u>: <br><br> Date: February 17, 2023 <br> Time: 1:30 p.m. <br> Courtroom.: 6A |

TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:

Please take notice that on February 17, 2023, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Department 6A of the above-entitled Court, Plaintiff Vicky Aronson ("Plaintiff") will move for an Order granting approval of a PAGA settlement. Defendants do not oppose this motion, so there will be no opposition or reply briefs filed. Defendants consent to a shortened notice period for a hearing on the PAGA settlement approval motion.

Plaintiff respectfully requests an Order as follows:

1. Approving the settlement of the individual and representative claims Plaintiff brings under the Private Attorneys General Act of 2004 ("PAGA");

2. Approving the gross settlement amount of $100,000 in exchange for dismissal of this entire action with prejudice and the release set forth in the settlement agreement;

3. Approving an award of $25,000 (25% of the gross settlement amount) in attorneys' fees and costs to Plaintiff's counsel;

4. Appointing CPT Group as the settlement administrator, and approving an award of up to $6,750 (of the gross settlement amount) in anticipated settlement administration costs; and

5. Approving $68,250 (the remainder of the gross settlement amount) as payment of civil penalties under PAGA, to be allocated as follows: $51,187.50 (75% of the PAGA penalties payment) to the California Labor and Workforce Development Agency ("LWDA") for its share of PAGA civil penalties, and $17,062.50 (25% of the PAGA penalties payment) to the aggrieved employees.

This motion is made on the grounds set forth in the accompanying materials, including this notice, the points and authorities set forth below, the attached declaration of James M. Treglio, the attached proposed order, the argument offered

1  at the hearing, and the complete files and records in this action.

2

3  Dated: January 19, 2023                    POTTER HANDY, LLP

4

5                                                        */s/ James M. Treglio*

6

7                                             By:_____

8                                                        James M. Treglio

9
                                             *Attorney for Plaintiff Vicky Aronson, in her*
10                                           *capacity as Private Attorney General*
                                             *Representative*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

Table of Authorities ..................................................................................................... iii

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY ..................................................... 2

        A.      The Parties And The Complaint ................................................................ 2

        B.      Discovery And The Denial Of Class Certification .................................... 3

        C.      Plaintiff's Appeal And The Parties' Trial Preparation ............................. 4

        D.      The Parties' First Global Settlement, Including Class Claims, And The
                Court's Denial Of The Class Action Settlement ...................................... 4

        E.      Plaintiff's Second Appeal, The Parties' Second Round Of Trial
                Preparation, And The Parties' Current Settlement ................................... 5

III.    ANALYSIS OF PLAINTIFF'S CLAIMS ............................................................ 6

        A.      Plaintiff's Threshold Claim Of Misclassification Is Subject To Attack,
                Because Defendants Argue That Carriers Properly Contracted As
                Independent Contractors ........................................................................... 6

        B.      Plaintiff's Underlying Labor Code Claims Are Subject To Attack ......... 7

                1.      Plaintiff's Willful Misclassification Claim Is Subject To Attack, Because
                        Defendants Argue They Had A Good Faith Dispute About Whether
                        Carriers Were Independent Contractors Or Employees ........................ 7

                2.      Plaintiff's Meal And Rest Break Claims Are Subject To Attack, Because
                        Defendants Argue That Carriers Did Not Work Long Enough To Trigger
                        Breaks, And If They Did, Carriers Voluntarily Chose To Forego Those
                        Breaks ................................................................................................. 8

                3.      Plaintiff's Claim For Uncompensated Non-Productive Time Is Subject
                        To Attack, Because Defendants Argue That Assembling Newspapers Is
                        Part Of The Piece-Rate Work And Many Carriers Did Not Personally
                        Perform The Work ............................................................................... 9

                4.      Plaintiff's Claim For Unreimbursed Business Expenses Is Subject To
                        Attack, Because Defendants Argue That The Carriers Themselves Did
                        Not Incur The Expenses And All Expenses Were Covered By Carriers'
                        Increased Piece-Rates ........................................................................ 10

                5.      Plaintiff's Claim For Unlawful Deductions Is Subject To Attack,
                        Because Defendants Argue That The Subject Fees Were Lawful ..... 11

                6.      Plaintiff's Remaining Claims For Wage Statement And Waiting Time
                        Penalties Are Subject To Attack, Because They Are Derivative Of The
                        Other Labor Code Claims And Defendants Argue That They Have A
                        Good Faith Dispute Defense ............................................................. 11

7.    Even If Plaintiff Wins All Or Some Of Her Claims, She May Not Be
Able To Collect A Judgment ................................................................. 12

C.    Plaintiff's Entire PAGA Claim Is Subject To Attack, Because
Defendants Argue It Is Unmanageable ................................................. 13

IV.    SETTLEMENT TERMS ................................................................................... 15

A.    Covered Aggrieved Individuals ............................................................ 15

B.    Monetary Terms Of The Settlement ..................................................... 15

C.    Settlement Administration, Timing Of Payments, And Settlement Notice ......... 16

D.    The Release .......................................................................................... 17

V.    STANDARD FOR APPROVING A PAGA SETTLEMENT ......................... 18

VI.    THE SETTLEMENT SHOULD BE APPROVED, BECAUSE IT IS FAIR,
REASONABLE, AND ADEQUATE .............................................................. 19

A.    The Strength Of Plaintiff's Case .......................................................... 19

B.    The Risk, Expense, Complexity, And Likely Duration Of Further
Litigation .............................................................................................. 20

C.    The Risk Of Maintaining Representative PAGA Status Through Trial ............. 20

D.    The Amount Offered In Settlement ...................................................... 21

E.    The Extent Of Discovery Completed .................................................... 24

F.    The Experience And Views Of Counsel ................................................ 24

G.    The Presence Of A Governmental Participant ...................................... 25

1

# Table of Authorities

<u>Cases</u>

*Amalgamated Transit Union, Local 1756 v. Superior Court* (2009) 46 Cal.4th 993, 1003 ...........................................................................................................................4, 5

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-17 (1997) ......................................5

*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 ...............................................passim

*Baumann v. Chase Investment Services Corp.*, 747 F.3d 1117, 1123-24 (9th Cir. 2014) 6, 8

*Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012) ......................................................17

*Caliber Bodyworks, Inc. v. Super. Ct.*, 134 Cal.App.4th 365 (2005) ..............................6

*Casida v. Sears Holding Corp*, 2012 WL 253217, at*3 (E.D.Cal. Jan. 26, 2012)...........6

*Ching v. Siemens Indus., Inc.*, 2014 U.S. Dist. LEXIS 89002, 2014 WL 2926210, at *4 (N.D. Cal. 2014)..........................................................................................................16

*Concepcion*, 131 S.Ct. at 1751-52 ...................................................................................7

*Doe v. Google, et al.*, Case No. CGC-16-556034 ..........................................................21

*Dunk v. Ford Motor Company* (1996) 48 Cal.App. 4th 1794, 1802 ..............................13

*Duran v. U.S. Bank National Assn.*, 59 Cal. 4th 1 (2014)............................................18

*FedEx. In Hernandez v. FedEx Ground*, Case No. 3:17-cv-02074 (N.D.Cal) ................15

*Franco v. Athens Disposal Co.*, 171 Cal.App.4th 1277 (2009).......................................5

*Glass v. UBS Fin. Servs.*, 2007 WL 221862, *16-17 (N.D.Cal. 2007) ..........................19

*In re Marriage of Biddle* (1997) 52 Cal.App.4th 396, 399 .............................................6

*In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000)....19

*Iskanian v. CLS Transportation*, 59 Cal.4th 348 (2014) ......................................4, 5, 6

*Libby v. Psycare Associates, Inc., et al.*, Case No. 37-2019-00030656-CU-OE-CTL.....21

*Mallick v. Superior Court* (1979) 89 Cal.App. 3d. 434...................................................13

*Officers of Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1995) 688 F.2d. 615, 624 ...............................................................................................13

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832- 33 (1999) ..............................................5

*Pedroza v. Petsmart, Inc.*, at*15 (C.D. Cal. Jan. 28, 2013)............................................7

*Ricci v. HSS*, Yuba County Superior Court No. CVCV17-00967 ..................................20

*Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425, 435-436 (9th Cir. 2015)4, 5, 8

*Sample v. Big Lots Stores, Inc.*, No. C 10-03276 SBA, 2010 WL 4939992 at *3 (N.D. Cal. Nov. 30, 2010)...........................................................................................5

*Sanders v. Pacific Gas & Elec. CO.* (1975) 53 Cal.App.3d 661, 671 ..............................6

*Thomas  v. Aetna Health of Cal. Inc.*, 2011 WL 2173715, at *11 (E.D. Cal. June 2, 2011) ..........................................................................................................6

## **Statutes**

Cal. Lab.Code § 2699(g)(l) ...............................................................................................5

Cal. Labor Code Section 2698 et seq...............................................................................1

California Lab. Code §2698(l) ......................................................................................1, 7

Fed.R.Civ.P. 23 ...............................................................................................................4

Labor Code §2699(1)(2) .....................................................................................6, 12, 22

Labor Code §2699(f)(2) ...................................................................................................7

Labor Code §2699(i) ........................................................................................................7

Rule 23 .........................................................................................................................5, 6

Rule 23(a) .........................................................................................................................8

Rule 23(c)(2) ....................................................................................................................8

Rules 23(a)(4) and (g) ......................................................................................................8

# I.      INTRODUCTION

Plaintiff Vicky Aronson seeks approval of a PAGA settlement, on behalf of the State of California, herself, and all other "aggrieved individuals."  The parties negotiated a $100,000 settlement of this action on behalf of approximately 377 newspaper carriers who contracted with either Defendant since July 23, 2017.  The PAGA action alleges Labor Code violations stemming from the alleged misclassification of carriers as independent contractors.

The settlement is the result of arm's length negotiations among the parties, who were represented by experienced counsel and assisted on two separate occasions by two neutral and seasoned mediators.  The parties have diligently investigated the claims, thoroughly studied the applicable law, fully briefed dispositive motions, received dispositive rulings from the Court on now dismissed and overlapping class claims, and prepared for trial in this action.  Plaintiff's counsel believes that in light of the risks of continued litigation, the settlement is fair, reasonable, and adequate when considering the interests of the State of California, Plaintiff, and the other aggrieved individuals.

Plaintiff respectfully requests that the Court (1) approve the settlement; (2) approve the gross settlement amount of $100,000 in exchange for a dismissal of this entire action with prejudice and the release set forth in the settlement agreement; (3) approve an award of $25,000 (25% of the gross settlement amount) in attorneys' fees and costs to Plaintiff's counsel; (4) appoint CPT Group as the settlement administrator, (5) approve an award of up to $6,750 (of the gross settlement amount) in anticipated settlement administration costs; and (6) approve $68,250 (the remainder of the gross settlement amount) as payment of civil penalties under PAGA, to be allocated as follows: $51,187.50 (75% of the PAGA penalties payment) to the California Labor and Workforce Development Agency ("LWDA") for its share of PAGA civil penalties, and $17,062.50 (25% of the PAGA penalties

payment) to the aggrieved individuals.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A. The Parties And The Complaint

On July 23, 2018, Plaintiff filed and served a letter setting forth her PAGA claims.  (Treglio Decl., ¶ 2.)   On April 22, 2019, Plaintiff filed her class and representative PAGA complaint against Defendants Gannett Co., Inc. and Gannett Publishing Services, LLC ("Gannett"); Louis Cox ("Cox"), and LDC Distribution LLC ("LDC") (collectively, "Defendants") in the Superior Court of California. Defendants removed the action to the United States District Court for the Central District of California on May 30, 2019.  (Dkt. No. 1).

Plaintiff contracted with Gannett, and after those contracts ended, Plaintiff contracted with LDC as an independent contractor carrier to deliver newspapers to home subscribers in the Palm Springs, California area.

In her complaint, Plaintiff alleges overlapping class action and representative PAGA claims.  Plaintiff's initial claim is that Defendants misclassified the carriers as independent contractors.  Plaintiff then argues that based on the misclassification, Defendants denied the carriers several California Labor Code protections (*e.g.*, meal and rest breaks) offered only to employees.  In other words, Plaintiff's class and PAGA claims all arise from the same alleged misclassification and substantive Labor Code violations, and they all require carriers to be employees.

Specifically, according to Plaintiff, Defendants violated the California Labor Code in their (1) willful misclassification of carriers as independent contractors; (2) failure to pay carriers for their non-productive time; (3) failure to provide carriers paid rest breaks and pay rest break premiums at the regular rate of pay; (4) failure to provide carriers meal periods and pay meal period premiums at the regular rate of pay; (5) failure to reimburse carriers for all of their business expenses, including gas, mileage, insurance, newspaper supplies, and personal cell phones; (6) unlawful

deductions from pay; (7) failure to pay all wages owed in a timely manner; (8) failure to provide complete and accurate wage statements to carriers; and (9) failure to timely pay all wages due to former carriers.  (Dkt. No. 1, Ex. A at pp. 48, 54-72: Complaint at ¶¶ 1, 20-70).

### B. Discovery And The Denial Of Class Certification

The parties engaged in significant discovery, including (1) written discovery through requests for admission, document demands, and interrogatories; (2) interviewing putative class members; (3) deposing four witnesses (consisting of carriers, Defendants, and Defendants' managers); (4) exchanging declarations of 28 witnesses (consisting of carriers, Defendants, and Defendants' managers); and producing thousands of pages of documents, including a sample of contracts that Defendants signed with carriers and their pay records.  (Treglio Decl., ¶ 3.)

On March 20, 2020, pursuant to the scheduling order in this action, Plaintiff filed her motion for class certification. (Dkt. No. 26). Also, on March 20, 2020, Defendants filed a separate motion to deny certification.  Defendants' class certification opposition argued that class treatment was inappropriate, because the threshold issue of whether carriers are independent contractors or employees raised too many individualized issues.  Pursuant to a statutory exemption, this issue is governed by the multi-factor test set forth in *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal. 3d 341 (1989), not the ABC Test set forth in *Dynamex Operations West, Inc. v. Super. Ct.*, 4 Cal. 5th 903 (2018).  Separately, Defendants' motion to deny class certification argued that irrespective of whether carriers are employees, their underlying Labor Code claims (which may be asserted by employees, but not independent contractors) are also plagued by individualized issues that defeat class certification.

On May 29, 2020, the Court denied certification on all class claims, finding that assessing independent contractor status under *Borello* raised too many

individualized issues. (Dkt. No. 38). The Court did so without deciding Defendants'
motion to deny class certification, which raised separate and independently
sufficient grounds to deny class certification.    Following the Court's class
certification order, the only claims remaining in this action were Plaintiff's PAGA
claim and her individual Labor Code claims.

### C. Plaintiff's Appeal And The Parties' Trial Preparation

On June 15, 2020, Plaintiff petitioned the Ninth Circuit under Rule 23(f) for
permission to appeal the order denying class certification.

While waiting for the Ninth Circuit to respond to Plaintiff's Rule 23(f)
petition, the parties had to prepare for a PAGA and individual trial of this action,
which was scheduled to begin on November 10, 2020.  As part of their extensive
trial preparation, the parties exchanged witness lists, trial exhibits, conferred over
jury instructions, stipulated facts, and motions *in limine*, drafted contentions of fact
and law, and prepared a lengthy pre-trial order.  (Treglio Decl., ¶ 4.)

On October 16, 2020, the Ninth Circuit granted Plaintiff's Rule 23(f) petition
to appeal the order denying class certification. This Court later stayed the trial court
action while the Ninth Circuit appeal was pending.

### D. The Parties' First Global Settlement, Including Class Claims, And The Court's Denial Of The Class Action Settlement

Following an informal exchange of further discovery, the parties participated
in a full-day mediation with Mark Rudy on August 31, 2021.[1] Mr. Rudy is one of the
most sought after and experienced mediators in employment wage and hour cases.
After approximately nine hours of negotiation, the parties settled all claims in this
action: the class action claims, the PAGA claim, and Plaintiff's individual claims.

On October 19, 2021, Plaintiff dismissed her appeal of the Court's order

---

[1] This was the parties' second mediation, as they also mediated for a full-day with
Jeffrey A. Ross on February 14, 2019.  (Treglio Decl., ¶ 6.)

denying class certification, and the Ninth Circuit approved.  (Dkt. No. 56.)

On March 18, 2022, Plaintiff filed her unopposed Motion for Preliminary Approval of Class Settlement. (Dkt. No. 64). On June 13, 2022, this Court denied Plaintiff's Motion for Preliminary Approval, finding that because the class claims could not be certified for trial due to the predominance of individualized issues, the class claims could not be certified for settlement purposes without additional evidence establishing predominance. (Dkt. No. 66 at pp. 4-5.)  The Court then set a new trial on September 29, 2022, for the only claims remaining in this action: the PAGA claim and Plaintiff's individual Labor Code claims.  (Dkt. No. 66.)

### E. Plaintiff's Second Appeal, The Parties' Second Round Of Trial Preparation, And The Parties' Current Settlement

On June 27, 2022, Plaintiff filed a second Rule 23(f) petition with the Ninth Circuit, seeking permission to appeal this Court's orders denying preliminary approval of the class action settlement and denying class certification.

While preparing for the second trial, the parties continued settlement talks. After several telephonic sessions among counsel, a global settlement of the remaining PAGA and individual claims, as well as Plaintiff's second Rule 23(f) petition, was reached on July 26, 2022.  (Treglio Decl., ¶¶ 7-8.)

The parties signed separate memorandums of understanding ("MOUs") for the PAGA and individual settlements, both of which were shared with this Court on July 26, 2022.  (Dkt. No. 68 at Ex. A.)  At that time, the parties asked the Court to vacate trial deadlines due to the global settlement, to allow the parties to turn their MOUs into long-form settlement agreements and to file a PAGA settlement approval motion.  The Court granted the parties' stipulation on July 29, 2022, and later set a status conference for January 20, 2023.  (Dkt. Nos. 69 and 71.)

On August 1, 2022, Plaintiff filed a request asking the Ninth Circuit to stay her second Rule 23(f) petition, pending settlement approval.   The request was

granted on August 22, 2022.   (Treglio Decl., ¶ 12.)   Pursuant to the PAGA settlement, within three calendar days of the Court approving that settlement and the order becoming final, Plaintiff will ask the Ninth Circuit to dismiss the second Rule 23(f) petition with prejudice.  (Treglio Decl., ¶ 13.)

## III.    ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Plaintiff's Threshold Claim Of Misclassification Is Subject To Attack, Because Defendants Argue That Carriers Properly Contracted As Independent Contractors

Every claim requires the Court to first determine that carriers are employees. That threshold legal issue is governed by *Borello*, not the ABC test from *Dynamex*.

Defendants contend that Plaintiff cannot meet the *Borello* test, because nearly all of its factors support independent contractor status.  Indeed, as the Court found in its order denying class certification, "[c]arriers could arrive to the facility at any time" to pickup newspapers, "Defendants did not dictate the carriers' delivery sequences or their methods of delivery," "some carriers engaged in work for other distributors while on their routes," "Defendants did not train carriers, force them to attend meetings, or follow a dress code," and "some carriers chose routes or negotiated for them."  (Dkt. No. 38 at 3, 9.)  This Court also found that the carriers' agreements "did not require the carriers to perform distribution work themselves, and expressly permitted carriers to use other people to pick up, assemble, and deliver newspapers without them.   Consistent with this provision, carriers, including Plaintiff, used substitutes and helpers to pick up, assemble, and deliver the newspapers." (*Id.* at 3.)

Plaintiff counters that because the carriers' contracts with LDC uniformly set forth delivery deadlines and specify which newspapers must be delivered and to whom, Defendants control how the carriers perform the delivery work.

Defendants counter that these matters lawfully go to defining the end result of the contracts, not dictating how the work is performed.  The Court deemed this a

"merits" issue and expressly refused to decide it at certification. (Dkt. No. 38 at 9.)

The parties recognize it is unclear how carriers will be classified as a matter of law. The parties thus prefer the certainty of a settlement.

### B. Plaintiff's Underlying Labor Code Claims Are Subject To Attack

#### 1. Plaintiff's Willful Misclassification Claim Is Subject To Attack, Because Defendants Argue They Had A Good Faith Dispute About Whether Carriers Were Independent Contractors Or Employees

Plaintiff seeks penalties under California Labor Code Section 226.8 to the extent Defendants "willfully misclassified" carriers as independent contractors.

Defendants counter that such penalties are unavailable, because Defendants contracted with carriers in good faith as independent contractors. Defendants correctly contend that no evidence exists showing their mental state about any alleged misclassification. For instance, no court or agency has notified Defendants of any misclassification and this lawsuit is the first time Defendants have been charged with misclassification. (Treglio Decl., ¶ 14.) This could bar the claim. *See Hassell v. Uber Techs., Inc.*, 2021 WL 2531076, at *22 (N.D. Cal. June 21, 2021) (dismissing a Labor Code § 226.8 claim, because "[P]laintiff's [evidence] . . . says nothing about defendant's mental state"). To the contrary, this Court already found in its order denying class certification that several of the *Borello* factors support independent contractor status. Further, Defendants argue that they have complied with EDD regulations that set forth when a carrier may lawfully contract as an independent contractor. *See* 22 Cal. Code Regs. § 4304-6. Plaintiff concedes that Defendants' conduct and relationships with carriers track some of the EDD regulations. (Treglio Decl., ¶ 14.) Defendants thus argue they did not willfully— *i.e.*, "voluntarily and knowingly"—misclassify any carriers. *See* Cal. Labor Code § 226.8(i)(4); *Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, 2013 WL 12171957, at *8 (C.D. Cal. July 22, 2013) (no finding of willfulness: "although it is undisputed that Defendant misclassified Plaintiff, it has not been shown that

Defendant knew it misclassified him at the time").

### 2. Plaintiff's Meal And Rest Break Claims Are Subject To Attack, Because Defendants Argue That Carriers Did Not Work Long Enough To Trigger Breaks, And If They Did, Carriers Voluntarily Chose To Forego Those Breaks

Under California law, employees who work fewer than 3.5 hours in a day are not entitled to take a rest break for that day. Likewise, employees who do not work over five hours in a day are not entitled to a meal break for that day.

Defendants argue that because carriers used substitutes, they rarely, if ever, worked long enough to trigger meal and rest breaks. Defendants further argue that even when carriers personally performed all delivery work themselves, they rarely, if ever, worked long enough to trigger meal breaks. According to Defendants, this is because the time between (1) when newspapers were made available to carriers after being printed and (2) the deadlines to deliver those newspapers were often too short to trigger meal breaks. Further, the parties agree that there are no records showing the hours worked or breaks taken by carriers. (Treglio Decl., ¶ 15.)

If carriers worked long enough to trigger breaks, Defendants argue that carriers controlled their schedules and they voluntarily chose to forego proper breaks. According to Defendants, the carriers were provided with meal and rest breaks under their agreements and in practice, which gave them full discretion to set their own schedules and hours of work (including working no hours at all). There is carrier testimony in the record that supports this argument. Moreover, Defendants point to the fact that they have no policy that bars carriers from taking breaks whenever they want for as long as they want.

Because Defendants contend that they provided proper breaks, they argue that there can be no meal and rest break liability.[2]

---

[2] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1040 (2012); *Mendoza v. Nordstrom*, 2012 WL 8264745, *6 (C.D. Cal. Sept. 21, 2012) ("[T]he *Brinker* court made clear that . . . [i]f an employee voluntarily chooses to work through a meal period,

Plaintiff counters that some carriers have testified they regularly worked long enough to trigger meal and rest breaks. Plaintiff also contends that the pressure to meet Defendants' delivery deadlines and to avoid penalties from for late or otherwise improper deliveries forced carriers to forego proper meal and rest breaks.

It is unclear how the Court will rule on the merits of the meal and rest break claims—including how the Court will judge the credibility of carriers offering contrasting testimony—so the parties prefer the certainty of a settlement.

### 3. Plaintiff's Claim For Uncompensated Non-Productive Time Is Subject To Attack, Because Defendants Argue That Assembling Newspapers Is Part Of The Piece-Rate Work And Many Carriers Did Not Personally Perform The Work

Plaintiff argues that because the carriers were paid for each newspaper they delivered, the time they spent waiting for newspapers to be made available after printing and then assembling them must be compensated as non-productive time under California Labor Code § 226.2(a)(1).

Defendants counter that they did not require carriers to arrive at newspaper pickup locations at any particular time. There was no work for carriers to do before the newspapers arrived, so any carriers who nevertheless showed up early, voluntarily chose to do so and they could engage in purely personal pursuits while waiting. Defendants thus contend that any waiting time is not compensable.

Defendants further counter that the time spent assembling newspapers is part of the delivery process, and hence already included in each carriers' piece-rate.

Defendants also contend that any non-productive time was incurred by the helpers and substitutes of carriers. Thus, carriers are not owed any compensation for non-productive time.

The parties recognize that there is no spot on case, so it is unclear how the

---

their employer is not liable for violating the meal period statute. So long as the employee is not compelled to do so, they may waive their meal break.").

Court will decide this claim.  The parties thus prefer the certainty of a settlement.

### 4. Plaintiff's Claim For Unreimbursed Business Expenses Is Subject To Attack, Because Defendants Argue That The Carriers Themselves Did Not Incur The Expenses And All Expenses Were Covered By Carriers' Increased Piece-Rates

Plaintiff argues that Defendants did not reimburse carriers for any business-related expenses, including mileage, newspaper assembly supplies, and cell phones.

Defendants counter that many carriers never incurred these expenses, because they did not personally perform the work.

Defendants assert that cell-phone use was voluntary, because carriers could navigate their routes by memory, with maps, and through written directions (as carriers did before cell phones were invented).  Only "necessary" expenses must be reimbursed under California Labor Code § 2802(a).

More globally, Defendants contend that carriers' negotiated per-paper rates were set in accordance with the carriers' requests, based on the expenses for mileage, gas, and supplies that each carrier anticipated for his or her chosen route(s) and the number of newspapers that would be delivered.  These negotiated rates were intended by Defendants and each carrier to cover all of the expenses the carriers expected to incur in connection, such as for gas and mileage for whatever vehicle they chose to use and for supplies that the carriers may have elected to use, if any. Defendants contend that these estimates covered carriers' actual costs, and whenever they did not, carriers negotiated for higher per-paper rates so their actual costs were met.  Indeed, Plaintiff successfully negotiated higher per-paper rates than were initially offered for the newspapers she delivered for Gannett.

According to Defendants, such a reimbursement method is permissible under *Gattuso v. Harte–Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 565 (2007) (holding that where an employer must reimburse an employee for vehicle-related expenses, it may fulfill that duty by paying the employee a lump sum, so long as the lump sum results

in payment of no less than the actual amount of the expenses incurred).

The parties agree that there is conflicting testimony in the record concerning whether each and every carrier negotiated an increased piece-rate that included the actual value of carriers' business expenses. The parties are thus uncertain how the Court will rule on this claim, which makes the certainty of a settlement appealing.

### 5.   Plaintiff's Claim For Unlawful Deductions Is Subject To Attack, Because Defendants Argue That The Subject Fees Were Lawful

Plaintiff contends that Defendants made unlawful deductions from carriers' compensation by deducting fees for improperly-delivered newspapers.

Defendants counter that fees were negotiable and many carriers never incurred the fees. Other carriers successfully appealed the fees. Also, deductions are permitted for gross negligence or dishonest or willful acts. *See* Cal. Code Regs., tit. 8, § 11010(10); *Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal. 2d 319, 329 (1962).

### 6.   Plaintiff's Remaining Claims For Wage Statement And Waiting Time Penalties Are Subject To Attack, Because They Are Derivative Of The Other Labor Code Claims And Defendants Argue That They Have A Good Faith Dispute Defense

Plaintiff seeks penalties under California Labor Code Section 226, because carriers received inaccurate wage statements to the extent they were not properly paid as employees. Plaintiff also seeks penalties under California Labor Code Section 203, because to the extent former carriers were not properly paid as employees, they did not timely receive those wages after their contracts ended.

The claims for Section 226 and 203 penalties are derivative of Plaintiff's Labor Code claims discussed above. Thus, if Plaintiff does not win on those other claims, she automatically loses on her claims for inaccurate wage statements and untimely payment of wages.

Defendants also argue that Section 203 "statutory" penalties are not

recoverable in a PAGA action for "civil" penalties.[3]

Defendants further contend that they have a good faith dispute defense to the claims for Section 226 and 203 penalties.  These penalties are available only if Defendants "willfully" or "knowingly and intentionally" violated the law.  As discussed above, Defendants contend they had a good faith belief that the carriers lawfully contracted as carriers, which bars the penalties.[4]

The parties cannot predict with certainty how the Court will rule on these claims, which makes the certainty of a settlement appealing.

### 7.  Even If Plaintiff Wins All Or Some Of Her Claims, She May Not Be Able To Collect A Judgment

During the PAGA period, only LDC contracted with carriers.  (Treglio Decl., ¶ 18.)  Gannett contracted with carriers only during the class action period, but the class action claims have been dismissed.  Thus, the only way that Gannett can be liable for the PAGA claim is if LDC is deemed an employer of the carriers, and then LDC and Gannett are deemed joint employers of the carriers.  (Treglio Decl., ¶ 18.)

The various tests for joint employment boil down to whether Plaintiff can establish that Gannett had the power to prevent carriers from working, set their wages and hours of work, and tell carriers when and where to report to work.  *See Martinez v. Combs*, 49 Cal. 4th 35, 70 (2010).

---

[3] *See Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 579-580 (2010) ("Some Labor Code provisions establish penalties that are not expressly denominated 'civil penalties' and are therefore not subject to the PAGA. . . .  [S]ection 203 imposes a statutory penalty . . . ."); *Moua v. Int'l Bus. Machines Corp.*, 2019 WL 1318376, at *5 (N.D. Cal. Mar. 22, 2019) ( "Plaintiff is . . . barred from seeking statutory penalties pursuant to section 203 at [a PAGA] trial.").

[4] *See, e.g.*, *Hill v. Walmart Inc.*, 32 F.4th 811, 821 (9th Cir. 2022) (affirming summary judgment for the defendant on Section 226 and 203 claims, despite the defendant "exercise[ing] significant control over [the plaintiff's work] activities," because other *Borello* factors supported independent contractor status, which created "some reasonable grounds for Walmart to believe that Hill was an independent contractor").

After extensive discovery, there is no evidence in the record that Gannett controlled carriers contracted with LDC. (Treglio Decl., ¶ 19.) Indeed, according to Gannett, when carriers contract with LDC, only that entity potentially has authority—without input or approval from Gannett—to negotiate carriers' compensation, to pay carriers (with LDC's own funds), to train carriers (if at all), to set carriers' schedules (if at all), and to contract with them in the first place. Indeed, the evidence shows that representatives from Gannett are not present at LDC's facilities, the entities share no office space or administrative services (like payroll and human resources), and Gannett does not compensate the carriers. (Treglio Decl., ¶ 19.)

Plaintiff recognizes that if Gannett is not a joint employer with LDC, then Plaintiff may recover PAGA penalties only from LDC. At best, then, the carriers may be left seeking recovery from a small business that contracts with only a few carriers at a time. (Treglio Decl., ¶ 20.) Plaintiff thus must balance seeking maximum recovery with the reality that LDC may be judgment proof. *Alabsi v. Savoya, LLC*, 2020 WL 587429, at *6 (N.D. Cal. Feb. 6, 2020) ("Plaintiff also points to the risk of non-payment due to Defendant's financial concerns. . . . Such risk of non-payment . . . makes the proposed settlement more reasonable.").

### C. Plaintiff's Entire PAGA Claim Is Subject To Attack, Because Defendants Argue It Is Unmanageable

The PAGA claim covers "all individuals who signed one or more written contracts with any Defendant to provide delivery of *The Desert Sun* newspaper (as well as other publications and products) to home delivery subscribers" between July 23, 2017 and the date this settlement is approved. (Settlement at ¶¶ 1.2, 1.18.)[5]

There are 377 carriers covered by the PAGA claim. According to Defendants,

---

[5] The Settlement Agreement is attached as Exhibit 1 to the Treglio declaration, and will be cited herein as "Settlement."

these carriers chose to operate their own businesses in unique ways, including (1) by using substitutes to perform some or all of the delivery work; (2) negotiating their routes and compensation or not; (3) taking on many delivery routes or one route; (4) choosing to take breaks or not; (5) assembling newspapers in facilities rented by LDC versus doing that work in buildings owned or rented by others; (6) simultaneously contracting with other newspaper publishers and businesses while working with Defendants; and (7) interacting with LDC representatives or not.

Plaintiff alleges nine Labor Code violations. Defendants contend that fact-intensive inquiries will be needed on a carrier-by-carrier basis to understand how these claims play out for each carrier, both on their independent contractor status and as to their underlying Labor Code claims. Indeed, Defendants argue that because this Court already found that class certification was improper due to predominating individualized issues, those same individualized issues make the PAGA claim unmanageable. *See Martinez-Sanchez v. Anthony Vineyards, Inc.*, 2021 WL 5769471, at *2 (E.D. Cal. Dec. 6, 2021) ("Federal district courts have held that PAGA claims can be struck if they would be unmanageable at trial.").

Plaintiff counters that none of this supposed differentiation among carriers' businesses is relevant, because PAGA claims need not be manageable. Indeed, the issue of whether PAGA claims must be manageable at trial is currently being considered by the California Supreme Court in *Estrada v. Royalty Carpet Mills, Inc.*

Defendants counter that even if the California Supreme Court holds that PAGA trials are not governed by a manageability standard, it will still likely recognize that any recovery of PAGA penalties is limited to those carriers who actually show up to trial and prove they personally suffered an injury.[6] Plaintiff

---

[6] Many district courts, including this Court, already recognize that PAGA penalties may be awarded only to those aggrieved individuals who show up at trial and prove their claims. *See, e.g.*, *De Paz v. Wells Fargo Bank, N.A.*, 2020 WL 2404897 (C.D. Cal. Feb. 18, 2020) ("[A] PAGA plaintiff has the burden to prove violations for all employees the

concedes that such a holding would drastically reduce the value of the PAGA claim, because only three members of the settlement class (including Plaintiff) are willing to appear at trial.  (Treglio Decl., ¶ 17.)[7]

The parties recognize that it is uncertain how the California Supreme Court will decide *Estrada*, so they prefer the certainty of a settlement.

## IV.   SETTLEMENT TERMS

### A. Covered Aggrieved Individuals

The settlement covers "all individuals who signed one or more written contracts with any Defendant to provide delivery of *The Desert Sun* newspaper (as well as other publications and products) to home delivery subscribers" between July 23, 2017 and the date the settlement is approved (the "PAGA Settlement Group Members").  (Settlement at ¶¶ 1.2, 1.18.)  377 carriers are covered by the settlement. (Treglio Decl., ¶ 23.)

### B. Monetary Terms Of The Settlement

The Gross Settlement Amount is $100,000.00 (Settlement at ¶ 1.12.)   The

---

plaintiff seeks to represent, so the absence of a viable plan for [manageably] proving violations as to all employees . . . merely means that [plaintiff] may ultimately be unable to prove [his] case.") (Hon. Philip S. Gutierrez); *Henderson v. JPMorgan Chase Bank*, 2013 WL 12126772 (C.D. Cal. July 10, 2013) ("Plaintiffs must prove a labor code violation with respect to each and every individual on whose behalf [they] seek[ ] to recover civil penalties. . . . Plaintiffs may ultimately be unable to prove their case . . . [b]ecause [their] recovery of civil penalties is limited by the requirements of proving their case—i.e., the requirements of proving a violation as to each and every employee for which they seek civil penalties.") (Hon. Philip S. Gutierrez); *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 959 (C.D. Cal. 2015).

[7] Plaintiff's counsel has repeatedly tried to contact every carrier.  For those who agreed to speak with Plaintiff's counsel, nearly every carrier was uninterested in participating in the lawsuit because (1) they had a general aversion to litigation; (2) they did not like receiving only 25% of the available PAGA penalties (given that 75% go to the LWDA); and/or (3) they wanted to remain independent contractors (which is also shown in the many carrier declarations gathered by Defendants in this action).  (Treglio Decl., ¶ 17.)

Gross Settlement Amount includes attorneys' fees and costs not to exceed $25,000 (subject to Court approval) and settlement administration costs not to exceed $6,750 (subject to Court approval).  (*Id.* at ¶¶ 1.4, 3.1.)  The remaining Net Settlement Fund is $68,250, 75% of which (i.e. $51,187.50) will be distributed to the California Labor & Workforce Development Agency ("LWDA") as required by PAGA, with the remaining 25% (i.e. $17,062.50) distributed to all aggrieved individuals according to a formula.  (*Id.* at ¶¶ 1.15-1.16, 4.4.)

The specific amount allocated to each PAGA Settlement Group Member will vary depending on the number of routes and pay periods he or she worked in relation to the total routes and pay periods worked by all aggrieved individuals during the PAGA period.  Specifically, for the PAGA period for each aggrieved individual, Cox and LDC shall provide to the settlement administrator data showing: (1) the total number of pay periods that each respective aggrieved individual was under contract with LDC to deliver only one delivery route, and each such pay period shall be rated at 1.0 point; and (2) the total number of pay periods that each respective aggrieved individual was under contract with LDC to deliver two or more delivery routes, and each such pay period shall be rated at 2.0 points.  (Settlement at ¶ 4.5.)

To determine the individual PAGA payment for each aggrieved individual, the Settlement Administrator will use the following formulas:

- Aggrieved Individual's Fractional Share = His or Her Total Assigned Points ÷ Total Number of Points of all Aggrieved Individuals as Calculated Above

- Aggrieved Individual's Individual PAGA Payment = Aggrieved Individual's Fractional Share x Total Of All Individual PAGA Payments

(Settlement at ¶ 4.5.)  The 377 PAGA Settlement Group Members worked 8,405 pay periods during the PAGA period.  (Treglio Decl., ¶ 23.)

**C. Settlement Administration, Timing Of Payments, And Settlement Notice**

The parties retained CPT Group, a highly experienced settlement administrator that has provided a cap of $6,750 for all of its costs in this case. (Settlement at ¶¶ 1.26, 3.1.)  LDC and Cox shall provide CPT Group with contact information, the number of pay periods, and the number of routes worked for each PAGA Settlement Group Member within 30 calendar days of the entry of an order approving this settlement.  (Settlement at ¶ 3.2.)

Not later than 30 days following the Effective Date (as defined in ¶ 1.9 of the Settlement), Defendants shall deposit the Gross Settlement Amount into a Qualified Settlement Fund. (Settlement at ¶ 4.1)  The settlement checks will be sent within 15 days of this settlement funding.  (Settlement at ¶ 4.8.)  The PAGA Settlement Group Members will have 120 calendar days to cash their checks.  (Settlement at ¶ 4.9.)

Any uncashed checks following the 120-day period will be deposited by the settlement administrator into an account for the non-profit charitable organization, Legal Aid at Work, which provides free services to help low-income people exercise and advance their workplace rights. (Settlement at ¶ 4.9)  There will be no reversion of unclaimed funds to Defendants.  (*Id.*)

The notice informing the PAGA Settlement Group Members of the nature of the lawsuit and the settlement payment will be provided with the settlement check. (Settlement at ¶ 1.17 and Ex. 1.)

**D. The Release**

As a material condition of the settlement, upon the Effective Date, Plaintiff—on behalf of herself, every PAGA Settlement Group Member, and the LWDA—will fully release Gannett, LDC, Cox, and each of the Released Parties during the PAGA Period, as follows:

As of the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Aggrieved Individual, and each of their respective executors, administrators, representatives, agents, heirs, successors, assigns, trustees,

spouses, or guardians, will release each of the Released Parties of and from any and all claims, rights, demands, charges, complaints, causes of action, damages, penalties, interest, attorneys' fees, costs, obligations, or liability of any and every kind based on any and all PAGA claims seeking civil penalties for violation of any provision of the California Labor Code during the PAGA Period that are or could have been asserted based on the factual allegations in any version of the complaints, amendments thereto, and LWDA notice letters filed in the Action, including, but not limited to, those for (1) failure to pay wages, or failure to timely pay wages during employment and at separation of employment, under California Labor Code Sections 201, 202, 203, 204, 210, and 218; (2) unlawful wage deductions pursuant to California Labor Code Sections 221, 223, and 400-410; (3) failure to pay all wages earned, minimum wages, overtime at the regular rate of pay, non-productive time, and liquidated damages pursuant to California Labor Code Sections 218.6, 510, 1194, 1194.2, 1197, 1197.1, and 1198; (4) failure to provide meal periods and to pay meal period premiums at the regular rate of pay, and failure to authorize and permit rest periods and to pay rest period premiums at the regular rate of pay, under California Labor Code Sections 218, 218.6, 226.7, 510, 512, 1194, 1197, and 1198; (5) failure to maintain required records under California Labor Code Sections 226 and 1174; (6) failure to furnish accurate itemized wage statements under California Labor Code Sections 226 and 226.3; (7) failure to indemnify for necessary business expenditures incurred in discharge of duties under California Labor Code Section 2802; (8) violation of bond requirements pursuant to California Labor Code Sections 401 and 402; (9) willful misclassification under California Labor Code Sections 218 and 226.8; (10) interest based on any of the claims listed above; and (11) attorneys' fees, expenses, and costs based on the claims listed above. (Settlement at ¶ 5.1.)

## V.     STANDARD FOR APPROVING A PAGA SETTLEMENT

"[A] trial court should evaluate a PAGA settlement to determine whether it is

fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." *Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021). Factors "useful in evaluating the fairness of a PAGA settlement" include "the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount," as well as "the extent of discovery completed," "the experience and views of counsel," and "the presence of a governmental participant." *Id.* at 75-77 (collecting cases). *See also Officers of Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1995) (listing similar factors).

## VI.   THE SETTLEMENT SHOULD BE APPROVED, BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Strength Of Plaintiff's Case

Plaintiff faces significant risk on the merits. She recognizes that the Court has already found that several of the *Borello* factors support independent contractor status. If the carriers are deemed independent contractors, they cannot assert any of their underlying Labor Code claims, which are available only to employees. And because carriers outsourced their work to helpers and substitutes, Defendants credibly argue that few or no Labor Code violations were committed against carriers, irrespective of whether they are deemed employees. Finally, Defendants credibly argue that the Court will reduce PAGA penalties, given that they claim they contracted in good faith with carriers as independent contractors.

Plaintiff also faces significant procedural risk. Defendants argue that the PAGA claim is unmanageable for the same reasons that the Court found the class claims were "riddled" with individualized issues. Since the Court denied class certification, Plaintiff has been unable to uncover new evidence supporting predominance, despite diligent efforts to do so. (Treglio Decl., ¶ 16.) And even if the Court rules that a PAGA trial need not be manageable, only three PAGA

Settlement Group Members are willing to appear at trial.  (Treglio Decl., ¶ 17.)  The maximum amount of possible PAGA penalties is thus small even if Plaintiff wins on every claim.

### B. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation

Without a settlement, this case will likely take substantial time to conclude. First, if the settlement is denied, Plaintiff will renew her Rule 23(f) petition asking the Ninth Circuit to allow her to appeal the Court's orders denying preliminary approval of the class action settlement and denying class certification.  If the petition is granted, the action will be stayed in this Court until the appeal is resolved, which could take years.  Second, if Plaintiff wins her appeal, the class certification issue will still be unresolved, because the Court has not ruled on Defendants' motion to deny class certification.  That motion sets forth independent reasons to deny class certification that are unrelated to the arguments Defendants made in opposition to Plaintiff's class certification motion.  Third, if a class is certified, discovery will re-open, which will further delay final resolution of this action.  (Treglio Decl., ¶ 21.)

Continued litigation does more than drastically raise the amount of attorneys' fees and delay.  Printed newspaper circulation continues to dwindle, so the longer this case lasts, the more difficult it may be to recover a judgment from LDC and Cox. Settling now avoids these risks, and the risk of carriers recovering nothing if this case proceeds to a merits decision.  (Treglio Decl., ¶ 22.)  *See Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. 2014) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### C. The Risk Of Maintaining Representative PAGA Status Through Trial

The issue of whether PAGA claims must be manageable at trial is currently being considered by the California Supreme Court in *Estrada v. Royalty Carpet*

*Mills, Inc.* If PAGA claims must be manageable, Plaintiff will have serious difficulty maintaining representative status through trial. This is because the Court already denied class certification due to predominating individualized issues, and despite diligent efforts, Plaintiff's counsel has been unable since then to uncover new evidence establishing predominance. (Treglio Decl., ¶ 16.)

And even if PAGA claims need not be manageable, this Court already holds that any recovery of PAGA penalties is limited to those individuals who actually appear at trial and prove they personally suffered an injury. This makes Plaintiff's PAGA claim worth little, because only three members of the settlement class (including Plaintiff) are willing to appear at trial. (Treglio Decl., ¶ 17.)

### D. The Amount Offered In Settlement

PAGA penalties are generally up to $50 to $100 per carrier for each pay period in which a distinct Labor Code violation occurred.[8] Plaintiff asserts nine Labor Code claims. Plaintiff alleges that some Labor Code violations may have occurred in every pay period and have no cap on recovery (non-productive time, rest breaks, meal breaks, untimely wages during employment, and inaccurate wage statements), while other Labor Code violations occurred less frequently and/or applicable law sets a cap on recoverable penalties (willful misclassification, unlawful deductions, expense reimbursement, and untimely wages after separation of employment).[9]

---

[8] *See* Cal. Labor Code §§ 558(a)(1) and 2699(f)(2); *Carter v. Jai-Put Enter. Inc.*, 2022 WL 1637212, at *25 (N.D. Cal. May 24, 2022); *Gibson v. Swift Trans. Co. of Ariz., LLC*, 2022 WL 17363071, at *5 (C.D. Cal. Feb. 4, 2022); *Esqueda v. Sonic Auto., Inc.*, 2015 WL 1821022, at *3 (C.D. Cal. Apr. 22, 2015) (statutes and cases collectively holding that PAGA penalties for meal, rest, and wage statement claims are $50 per pay period). The higher $200 penalty per pay period is unavailable, because no court or agency has found Defendants liable for any of the alleged Labor Code claims. *See Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1144 (9th Cir. 2021); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008).

[9] For instance, penalties for untimely payment of wages after separation of employment happen only once—in the final pay period. Unlawful deductions occur only when

If all of the 377 PAGA Settlement Group Members are willing to appear at trial, they each prove all of their claims, all of Defendants' defenses are rejected, full stacking of PAGA penalties is permitted even for overlapping claims based on the same wrongdoing, and every carrier suffered a Labor Code violation for each of the nine claims in the maximum number of pay periods at issue for each claim, the maximum available PAGA penalties would be $5,345,500. (Treglio Decl., ¶ 24.)

But "the test is not the maximum amount Plaintiff might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001). It is unrealistic for Plaintiff to expect to recover anywhere near $5,345,500.

First, only three of the PAGA Settlement Group Members are willing to try to prove their claims at trial. Assuming they overcome all of Defendants' defenses and suffered each alleged Labor Code violation for all nine claims in every pay period they worked during the PAGA period, their maximum available PAGA penalties are $39,700. (Treglio Decl., ¶ 25(a).)

Second, full stacking of PAGA penalties for all nine Labor Code claims might not be permitted.[10]  Defendants argue that all of the claims stem from alleged

---

carriers are subject to fees for improper deliveries. Such deductions occur on average twice per year for each carrier. (Treglio Decl., ¶ 24(k).) No case or statute sets a deadline by which business expenses must be reimbursed. Defendants argue that expense reimbursement liability arises at most in only one pay period per carrier—the final pay period for each former carrier. Plaintiff seeks reimbursement once per month for each carrier during the PAGA period. (Treglio Decl., ¶ 24(j).)

[10] *See Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) ("California Law is unsettled as to whether PAGA penalties may be stacked, and . . . in the absence of binding appellate decision on this issue, courts have gone in different directions."). Indeed, like other district courts in California, this Court has ruled that "plaintiffs may only recover a set of civil penalties for each [distinct] type of violation." *Snow v. United Parcel Serv., Inc.*, 2020 WL 1638250, at *4 (C.D. Cal. Apr. 1, 2020) (Hon. Philip S. Gutierrez); *Smith v. Lux Retail N. Am.*, 2013 WL 2932243, *4 (N.D. Cal. June 13, 2013) (questioning whether it was "really plausible that we

misclassification, and some of the underlying Labor Code claims overlap, which limits the amount of stackable PAGA penalties per pay period.

Third, Defendants have credible defenses. Indeed, the Court has already found that several of the *Borello* factors support independent contractor status. Yet, all of the asserted claims require carriers to be employees.

Fourth, even if Defendants' defenses are rejected, they are correct that some carriers did no work, or performed only some of the delivery work, due to the use of helpers and substitutes. This means Labor Code violations did not occur in every pay period, which greatly reduces the maximum recovery. (Treglio Decl., ¶ 25(d).)

Fifth, PAGA penalties are discretionary, and courts often reduce them by significant amounts, including up to 95%.[11] This Court could find that Defendants made a good faith determination to contract with carriers as independent contractors, and/or that the aggrieved individuals were not greatly harmed by any Labor Code violations given that they chose their working relationships with Defendants and received the tax benefits of working as independent contractors. On these bases, the Court could reduce PAGA penalties. (Treglio Decl., ¶ 25(e).)

Based on the likelihood that the Court will limit recovery to the three carriers who may appear at trial (or even strike the PAGA claim as unmanageable, based on how *Estrada* is decided), the maximum recoverable PAGA penalties at trial are $39,700. (Treglio Decl., ¶ 26.) A $100,000 settlement is over 2.5 greater than this maximum available recovery. District courts routinely approve PAGA settlements

---

would pile one penalty on another for a single substantive wrong").

[11] *See, e.g.*, *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) ("only $5 per violation"); *Heredia v. Eddie Bauer LLC*, Case No. 5:16-cv-06236-BLF (N.D. Cal. Apr. 17, 2020) ($18.83 per pay period); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1100 (N.D. Cal. 2019) ("36% of the original amount of PAGA penalties Plaintiffs requested"); *Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (27% of potential recovery).

that are far below this percentage of maximum recoverable PAGA penalties.[12]

### E. The Extent Of Discovery Completed

The parties have thoroughly investigated the claims. To prepare for class certification, the parties engaged in extensive discovery, including (1) written discovery through requests for admission, document demands, and interrogatories; (2) interviewing putative class members; (3) deposing four witnesses (consisting of carriers, Defendants, and Defendants' managers); (4) exchanging declarations of 28 witnesses (consisting of carriers, Defendants, and Defendants' managers); and producing thousands of pages of documents, including a sample of contracts that Defendants signed with carriers and their pay records. (Treglio Decl., ¶ 3.)

The parties then prepared for trial, including by (A) exchanging more written discovery responses; (B) producing additional documents; (C) drafting joint witness and exhibit lists; (D) filing separate contentions of fact and law; (E) conferring about stipulated facts; (F) exchanging deposition designations; (G) drafting jury instructions; (H) preparing a final pre-trial order; and (I) conferring about motions *in limine*. (Treglio Decl., ¶ 4.)

The parties then prepared for a second mediation, including by exchanging mediation briefs and exposure analyses. (Treglio Decl., ¶ 7.)

### F. The Experience And Views Of Counsel

A "presumption of fairness" exists when a proposed settlement "was negotiated at arm's length by counsel." *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130 (2008). "The court undoubtedly should give considerable weight to the competency

---

[12] *See, e.g.*, *Valadez v. CSX Intermodal Terminals, Inc.*, 2020 WL 13179429, at *1 (N.D. Cal. May 13, 2020) (6%); *Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (0.27-2%); *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) (0.2%); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, * 9 (N.D. Cal. Oct. 11, 2016) (0.15%); *Hamilton v. Juul Labs, Inc.*, 2021 WL 5331451, at *10 (N.D. Cal. Nov. 16, 2021) (1.3-2.2%).

and integrity of counsel and the involvement of a neutral mediator in assuring itself that a settlement agreement represents an arm's length transaction entered without self-dealing or other potential misconduct." *Id.*

Based on extensive discovery, careful analysis, and consultation with two experienced mediators, Plaintiff's counsel believes that the settlement is fair, reasonable, and adequate. (Treglio Decl., ¶ 27.) The declaration of Plaintiff's counsel demonstrates their extensive experience in wage and hour class actions and PAGA actions in California. (Treglio Decl., ¶ 28.)

After conducting extensive discovery and trial preparation, the parties scheduled a full-day mediation with Mark Rudy. (Treglio Decl., ¶ 7.) Mr. Rudy is a highly-respected and experienced mediator in employment wage and hour cases. Mr. Rudy requested legal briefings and exposure analyses from all counsel. (Treglio Decl., ¶ 7.) The mediation was contentious, hard fought, and lasted well into the night, with the parties engaging in exhaustive discussion and negotiation of all factual and legal issues in the action. (Treglio Decl., ¶ 7.)

### G. The Presence Of A Governmental Participant

After receiving the settlement and this motion, the LWDA has not objected to the settlement, which signifies governmental approval of it. (Treglio Decl., ¶ 29.)

Dated: January 19, 2023          Respectfully,

POTTER HANDY, LLP


By:_____*/s/ James M. Treglio*____
          James M. Treglio

*Attorneys for Plaintiff Vicky Aronson*