

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DKT. 72

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
| Title | Aronson v. Gannett Co., Inc. | | |

| | |
|---|---|
| Present: The Honorable | Philip S. Gutierrez, United States District Judge |

| | |
|---|---|
| H. Crawford for Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING Plaintiffs' motion for approval of PAGA action settlement.

Before the Court is an unopposed motion for approval of a PAGA representative action settlement filed by named plaintiff Vicky Aronson ("Aronson"), the California Labor and Workforce Development Agency ("LWDA"), and the Aggrieved Employees (collectively, "Plaintiffs"). *See generally* Dkt. # 72 ("*Mot.*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** the motion for settlement approval.

I.  Background

  A.  Factual and Procedural History

Plaintiffs brought this action on behalf of former and current newspaper carriers for Defendants Gannett Co., Inc. and Gannett Publishing Services, LLC, LDC Distribution, LLC, and Louis Cox (collectively, "Defendants"), alleging that Defendants misclassified their carriers and seeking statutory and civil penalties under the California Labor Code, Business and Professions Code, and Private Attorneys General Act ("PAGA"). *See Notice of Removal*, Dkt. # 1 ("*NOR*"), ¶ 2; *see also Mot.* 2:16 18.

In April 2019, Plaintiffs filed a putative class action and representative PAGA action against Defendants in California state court, which Defendants removed to this Court on May 30, 2019. *See generally NOR.* Plaintiffs asserted the following eleven causes of action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

First Cause of Action: PAGA Penalties for Willful Misclassification of All of Defendant's Newspaper Carriers, Cal. Lab. Code §§2698 *et seq.*, 226.8(a)(1) and 226.8(b) and/or 226.8(c). *Id.*, Ex. A (Complaint), ¶¶ 73 77 ("*Compl.*").

Second Cause of Action: Failure to Pay Separately and Hourly for Time Spent By Newspaper Carriers on Nonproductive Times in California, Cal. Lab. Code §§ 1194, 1194.2, and 226.2. *Compl.* ¶¶ 78 84.

Third Cause of Action: Failure to Provide Paid Rest Periods to Newspaper Carriers and Pay Missed Rest Break Premiums, Cal. Lab. Code § 226.7 and IWC Wage Order No. 9, Section 12. *Compl.* ¶¶ 85 90.

Fourth Cause of Action: Failure to Provide Off-Duty Meal Breaks and Failure to Pay Missed Meal Break Premiums, Cal. Lab. Code §§ 226.7, 512. *Compl.* ¶¶ 91 97.

Fifth Cause of Action: Failure to Reimburse Business Expenses, Cal. Lab. Code § 2802. *Compl.* ¶¶ 98 102.

Sixth Cause of Action: Unlawful Deductions from Pay, Cal. Lab. Code §§ 221, 223, 400-410 and Wage Order No. 1, Section 8. *Compl.* ¶¶ 103 11.

Seventh Cause of Action: Failure to Pay All Wages Within a Timely Manner, Cal. Lab. Code §204. *Compl.* ¶¶ 112 21.

Eighth Cause of Action: Failure to Provide Complete Wage Statements, Cal. Lab. Code §§226(a), 226.2(a)(2)(A)-(B). *Compl.* ¶¶ 122 28.

Ninth Cause of Action: Waiting Time Penalties for Failure to Pay Wages Due On Termination, Cal. Lab. Code §§201-203. *Compl.* ¶¶ 129 34.

Tenth Cause of Action: Unfair Competition Law Violations, Bus. & Prof. Code §§ 17200, *et seq. Compl.* ¶¶ 135 45.

Eleventh Cause of Action: Labor Code Private Attorney General Act PAGA Penalties for Labor Code Violations Other than Misclassification, (Cal. Lab. Code §§2698-2699.5; 558). *Compl.* ¶¶ 146 54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

The Court subsequently denied Plaintiffs' motion for class certification on all claims, finding individualized issues predominated. *See generally* Dkt. # 38. Plaintiffs then appealed to the Ninth Circuit under Federal Rule of Civil Procedure 23(f), *see* Dkt. # 48, and the parties prepared for trial on the remaining PAGA individual Labor Code claims, *see Mot.* 4:3 11.

While the appeal before the Ninth Circuit was pending, the parties participated in a "full-day mediation" on August 31, 2021. *See Mot.* 4:15 24. As a result of this mediation, all claims were settled: "the class action claims, the PAGA claim, and [Aronson]'s individual claims." *Id.* 4:23 24. Aronson then dismissed her appeal, *see id.* 4:25 5:1, and Plaintiffs filed a Motion for Preliminary Approval of Class Settlement, *see generally* Dkt. # 64 ("*Prelim. Approval Mot.*"). This Court denied the approval, finding that because the class could not be certified for trial, it could not be conditionally certified for settlement, and set a new trial date to resolve the remaining claims. *See generally* Dkt. # 66 ("*Order Denying Class Settlement Mot.*"). Aronson then filed another Rule 23(f) petition to the Ninth Circuit. *See* Dkt. # 70.

The parties proceeded to engage in settlement talks, which ultimately resulted in a global settlement of the individual and PAGA claims. *See Mot.* 5:18 20. Aronson also agreed to dismiss her Ninth Circuit petition with prejudice upon final approval of the settlement agreement. *See Declaration of James M. Treglio*, Dkt. # 72-1 ("*Treglio Decl.*"), ¶ 10, Ex. 1 (Joint Stipulation of PAGA Settlement; Release of Claims), ¶¶ 1.9(c), 2.18 ("*Settlement*"). On July 26, 2022, the parties signed Memorandums of Understanding ("MOUs") regarding the Settlement and asked the Court to "allow the parties to turn their MOUs into long-form settlement agreements and to file a PAGA settlement approval motion." *Mot.* 5:21 23; *see also* Dkt. # 68. The Court granted the parties' stipulation, *see* Dkt. # 69, and the finalized PAGA Settlement is now before the court for approval. *See generally Mot.*; *see also Settlement*.

B.  Settlement Terms

The parties agreed to a non-reversionary $100,000 Gross Settlement Amount to resolve both the individual and representative claims brought under PAGA. *See Settlement* ¶¶ 1.12, 4.9. The representative claims are on behalf of 377 "Aggrieved Individuals," which is defined as "'all individuals who signed one or more written contracts with any Defendant to provide delivery of The Desert Sun newspaper (as well as other publications and products) to home delivery subscribers' between July 23, 2017 and the date the settlement is approved . . . ." *Id.* ¶ 1.2. The $100,000 Gross Settlement Amount includes an award of attorneys' fees and costs, settlement administration fees, and the PAGA Settlement Amount of $68,250 75% of which will be distributed to the LWDA. *See Mot.* 1:17 2:1. After these deductions, the remaining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

25% of the PAGA Settlement Amount, or the Net Settlement Amount, to be distributed to the Aggrieved Individuals is approximately $17,062.50. *Id.*

Each Aggrieved Individual will be entitled to a fractional share of the Net Settlement Amount based on the individual's total number of work weeks and routes compared to other Aggrieved Individuals. *See Settlement* ¶¶ 1.13, 4.5 (providing calculation for Aggrieved Individual's fractional share and PAGA Payment). And the Settlement Administrator will rely on Defendants' records to calculate each Aggrieved Individual's payment. *See id.* ¶ 4.5. Anyone who disputes their fractional share may produce evidence to the Settlement Administrator; but absent "compelling evidence," Defendants' records will be presumptively correct. *See id.*

The Settlement Administrator will send the PAGA payments to the Aggrieved Individuals within 15 days after the funding of the Gross PAGA Settlement Amount. *See id.* ¶ 4.8. If a check is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will attempt to determine the correct address using a skip-trace search. *See id.* ¶ 4.9 Aggrieved Individuals will then have 120 days after the settlement checks are mailed to cash their checks. *See id.* Any uncashed or undeliverable checks after 120 days will be voided, and the balance will be deposited into the non-profit charitable organization Legal Aid at Work, "which provides free services to help low-income people exercise and advance their workplace rights." *Id.* No part of the Net PAGA Settlement Amount will be returned to Defendants. *Id.*

In exchange, Aggrieved Individuals agree to release Defendants of:

> [A]ny and all PAGA claims seeking civil penalties for violation of any provision of the California Labor Code during the PAGA Period that are or could have been asserted based upon the factual allegations in any version of the complaints, amendments thereto, and LWDA notice letters filed in the Action[.]

*Id.* ¶ 5.1. The Released Claims expressly do not include claims that as a matter of law cannot be released. *Id.*

Plaintiffs now bring this motion for approval of the Settlement. *See generally Mot.* Plaintiffs ask the Court to (1) grant approval of the Settlement as to both the individual and representative PAGA actions, (2) grant approval for the gross settlement amount in exchange for dismissal of the action with prejudice and the release set forth, (3) approve an award of $25,000 in attorney's fees, (4) appoint CPT Group as the Settlement Administrator and authorize an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

award of up to $6,750, and (5) approve the PAGA Settlement Amount of $68,250 – 75% to be allocated to LWDA and 25% to be paid to the Aggrieved Individuals. *See Mot.* 1:17–2:1.

II.     Legal Standard

A plaintiff bringing a PAGA claim "does so as a proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). "Because the 'plaintiff represents the same legal right and interest as [the] state" in a PAGA action, a judgment "binds not only that employee but also the state labor law enforcement agencies" and non-party employees. *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting *Arias*, 46 Cal. 4th at 986). When a PAGA claim settles, courts are tasked with approving the settlement agreement but only after determining whether the relief provided is "genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *Id.* (citation omitted). Such a determination is made upon a finding that the settlement (1) meets the statutory requirements of PAGA and (2) is "fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Chamberlain v. Baker Hughes, a GE Co., LLC*, No. 119CV00831DADJLT, 2020 WL 4350207, at *4 (E.D. Cal. July 29, 2020); *see also Cresci v. Cox Auto. Corp. Servs., Inc.*, No. 2:20-cv-06832-VAP-SKx, 2021 WL 2954086, at *2 (C.D. Cal. May 5, 2021) (holding that courts in this District will approve a PAGA settlement agreement if it is "fair").

III.    Analysis of the Settlement Agreement

A.     PAGA Statutory Requirement

The Settlement readily complies with the statutory requirements of PAGA.

Under PAGA, "75 percent of the civil penalties recovered by aggrieved employees must be allocated to the LWDA and 25 percent allocated to aggrieved employees." Cal. Lab. Code § 2699(i). The parties here have agreed that $51,187.50, or 75%, of the PAGA Settlement Amount will go to the LWDA, and the remaining $17,062.50, or 25%, will be distributed to participating aggrieved employees on a pro rata basis. *See Settlement* ¶ 4.4.

The Court thus turns its attention to assessing the fairness of the PAGA Settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

   B.   Fundamentally Fair, Reasonable, and Adequate

In the assessment of what is fair, "[t]he court may consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-CV-00252 - JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017) (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *9 (N.D. Cal. Dec. 19, 2012)). Courts have also borrowed from the class settlement context and considered other factors, such as: (1) the anticipated difficulties of litigating the case; (2) the risks associated with the costs of continued litigation; (3) Counsel's experience in pursuing these kinds of settlements; and (4) lack of objection by the LWDA. *See Campbell v. FMC Techs. Surface Integrated SVCS*, No. 1:20-CV-00901-CDB, 2022 WL 17555517, at *3 (E.D. Cal. Dec. 9, 2022); *see also Chamberlain*, 2020 WL 4350207, at *4 5.

Plaintiffs estimate that the maximum possible recovery at trial would be roughly $5,345,500 if all 377 carriers were to succeed on all nine labor code violations and for the maximum number of pay periods. *See Mot.* 22:1 6. Plaintiffs, however, explain that recovery of this amount is unlikely at trial for the following reasons: (1) only three Aggrieved Individuals are willing to appear at trial, reducing the total maximum amount recoverable to $39,700; (2) the maximum recoverable amount could be further reduced if Plaintiffs are precluded from "stacking" PAGA penalties for all nine labor code violations; and (3) factual issues, including whether Defendant acted willfully, threaten the merits of Plaintiffs' claims. *See Mot.* 22:11 17, 23:1 16.

The most compelling of these arguments is that PAGA penalties would be limited to the three Aggrieved Individuals who attend trial. *See Mot.* 15:1 3. And without a viable plan to prove violations as to the 374 absent carriers, Plaintiffs' maximum recovery at trial would likely be limited to $39,700. *See De Paz v. Wells Fargo Bank, N.A.*, CV 18-9779 PSG (PJWx), 2020 WL 2404897, at *6 (C.D. Cal. Feb. 18, 2020) ("[A] PAGA plaintiff has the burden to prove violations for all employees the plaintiff seeks to represent, so the absence of a viable plan for proving violations as to all employees . . . means that [plaintiff] may ultimately be unable to prove his case." (citation omitted)). The $100,000 Gross Settlement Amount is therefore 2.5 times greater than what the three Aggrieved Individuals would recover were they to succeed on all their claims at trial. *See Mot.* 23:20 21.

Additionally, Plaintiffs risk no recovery and ongoing expenses were they to proceed to trial. Plaintiffs' claims all arise from the allegation that Defendants willfully misclassified their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

carriers as independent contractors. *See Mot.* 6:8 9. But the Court, in denying class certification, pointed to several facts supporting that the classification was proper. *See* Dkt. # 38 at 3, 9 (citing to the fact that Defendants did not control carriers' delivery routes or methods and that carriers simultaneously worked for other distributors). And even Plaintiffs concede that Defendants have a viable defense that they contracted with Plaintiffs as independent contractors in good faith. *See Mot.* 19:20 22.

Finally, other factors weigh in favor of approval. First, the parties only settled after conducting significant discovery and preparing for trial. *Treglio Decl.* ¶ 28. This suggests that the parties were fully informed and had sufficient information to assess the merits of their claims and defenses. Second, the Settlement was only reached after the parties submitted to a full day of meditation with a highly respected and experienced mediator, Mark Rudy. *See id.* ¶¶ 3,7, 28; *Mot.* 25:6 8. And courts generally agree that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See, e.g.*, *Satchell v. Fed. Express Corp.*, No. C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). Last, the LWDA did not object to the Settlement after timely receiving the settlement agreement and this motion. *See Mot.* 25:16 18.

Considering these factors, including the ongoing risks of litigation and the Aggrieved Individuals' relative recovery at trial, the Court is satisfied that the PAGA Settlement is fundamentally fair, reasonable, and adequate.

C. **Administration Costs**

Plaintiffs ask the Court to appoint CPT Group as Settlement Administrator and approve a payment of no more than $6,750 to administer the Settlement. *Settlement* ¶ 3.1. This estimate is ultimately reasonable given that this action is brought on behalf of 377 individuals. *See Campbell*, 2022 WL 17555517, at *4 (finding settlement administration costs of $1,514.23 reasonable for a class size of approximately 15 people). The Court thus **APPOINTS** CPT Group as Settlement Administrator and finds the estimated administration costs reasonable.

D. **Remaining Funds**

The Settlement provides that an Aggrieved Individual will have 120 days from date of issuance to cash his or her settlement check. *Settlement* ¶ 4.9. In the event there is any remaining balance in the common fund as a result of uncashed or undeliverable checks, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

Settlement Administrator will donate the funds *cy pres* to the non-profit charity Legal Aid at Work. *Id.*

The *cy pres* doctrine permits courts to put unclaimed portions of a settlement fund "to its next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhemina Model Agency, Inc.*, 472 F.3d 423, 436 (9th Cir. 2007). The Ninth Circuit requires all *cy pres* distributions to (1) address the objectives of the underlying statutes; (2) target the plaintiff class; and (3) provide reasonable certainty that any member will be benefitted. *See Naschin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (emphasizing that whether a *cy pres* remedy is fair, adequate and reasonable depends upon whether the award "account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statues, and the interests of the silent class members"). "A *cy pres* award meets the objectives of the underlying statute when the *cy pres* recipient's mission and the statute's goals have a non-tenuous connection." *Hofmann v. Dutch LLC*, No. CV 14-02418 GPC JLB, 2017 WL 840646, at *3 (S.D. Cal. Mar. 2, 2017).

Counsel justifies the appointment of Legal Aid at Work as an appropriate recipient of the funds by pointing to the services it provides on behalf of low-wage California workers to exercise their workplace rights. *See Mot.* 25:3 5. The Court is satisfied that Legal Aid at Work bears a sufficient relationship to the Aggrieved Individuals, such that the donation will be in the PAGA Members' interests.

E.   Conclusion

For the foregoing reasons, the Court **GRANTS** the motion, **APPROVES** the PAGA Settlement and administration costs, and **APPOINTS** CPT Group as Settlement Administrator.

IV.   Attorneys' Fees and Costs

"PAGA does not provide a specific standard for evaluating attorney's fees in connection with a settlement of PAGA claims." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at 6 (N.D. Cal. Aug. 25, 2017). However, the "Lodestar method is a 'well-established method for determining the reasonableness of an attorneys fee award' and has been used by courts to assess attorneys' fees in connection with PAGA settlements." *Cresci*, 2021 WL 2954086, at *5 (quoting *Jordan v. NCI Grp., Inc.*, No. EDCV161701JVSSPX, 2018 WL 1409590, at *4 (C.D. Cal. Jan. 5, 2018)). To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *See In*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-996 PSG (JEMx) | Date | February 15, 2023 |
|---|---|---|---|
| Title | Aronson v. Gannett Co., Inc. | | |

*re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Id.*

In this case, Plaintiffs' counsel requests a fee award of 25% of the Gross Settlement amount, or $25,000. The Court, however, cannot make any determination as to the reasonableness of Counsel's request as Plaintiffs have not provided any support for that number. *See generally Mot.* The Court thus **ORDERS** Counsel to submit a separate motion for attorneys' fees and to provide the requested hourly rates and billing records showing the hours expended in this case, as well as an explanation of whether the lodestar multiplier is appropriate in comparison with similar cases.

IV. <u>Conclusion</u>

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for approval of the PAGA action settlement. The Court also **APPOINTS** CPT Group as the Settlement Administrator. Finally, the Court **ORDERS** Plaintiffs to file a motion for attorneys' fees by <u>**Friday, April 14, 2023**</u>. The motion must include declarations supporting the reasonableness of each attorney's requested hourly rate and itemized billing statements showing hours worked, hourly rates, expenses incurred thus far, and expenses to be incurred in the future. And if applicable, Plaintiffs must explain why the proposed multiplier to be applied to the lodestar value for the attorneys' fees is appropriate in this case.

**IT IS SO ORDERED.**